**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sylvia Francine Fuentes, | No. CV-22-00147-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Sylvia Francine Fuentes's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 20, "Def. Br."), and Plaintiff's Reply Brief (Doc. 21). The Court has reviewed the briefs and Administrative Record (Doc. 14, "R.") and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 19–29) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed her Application for Social Security Disability Insurance benefits on January 12, 2020, for a period of disability beginning on October 27, 2019. (R. at 19.[1]) Her claim was denied initially on April 20, 2020, and upon reconsideration on July 24, 2020.

---

[1] Plaintiff previously applied for, and was awarded, benefits for a closed period of disability from September 24, 2013 to December 10, 2018 because her impairments had improved such that she was able to return to work. (R. at 19.) Plaintiff filed the instant Application after she was involved in a car accident on October 27, 2019. (Pl. Br. at 2 n.2.)

(*Id.*) On March 9, 2021, Plaintiff appeared before the ALJ for a hearing regarding her claim. (*Id.*) The ALJ denied Plaintiff's claim on March 30, 2021. (R. at 22–34.) On November 30, 2021, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–6.) This appeal followed.

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of lumbar and cervical degenerative disc disease and non-severe impairments of hip dysfunction, breast cancer, asthma, diastolic dysfunction, and obesity. (R. at 21–22.) Ultimately, the ALJ evaluated the medical evidence and testimony from Plaintiff and a vocational expert and concluded that Plaintiff was not disabled for the period beginning October 27, 2019. (R. 28–29.) In so doing, the ALJ first determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 22.) The ALJ then found that Plaintiff has the Residual Functional Capacity ("RFC") "to perform light work . . . except she can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds . . . [and] can frequently balance and occasionally crawl, stoop, kneel and crouch." (R. at 23–26.) Accordingly, the ALJ found that Plaintiff is capable of performing past work "as a Shuttle driver, as actually performed, and as a Road Supervisor, as generally performed." (R. at 27.) The ALJ also found that Plaintiff can perform other work in the national economy, including as office helper, bench assembler, and packing line worker, such that Plaintiff is not under a disability as defined in the Social Security Act. (R. at 27–29.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

III.     ANALYSIS

Plaintiff raises two arguments for the Court's consideration. First, she argues the ALJ erred by failing to provide sufficient explanation supported by substantial evidence for his rejection of the medical opinions provided by two physicians who treated Plaintiff. (Pl. Br. at 12–17.) Second, she argues the ALJ erred by rejecting her symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence. (*Id.* at 17–24.) The Court examines these arguments in turn.

A.     Evaluation of the Medical Opinion Evidence

Plaintiff argues the ALJ erred in his evaluation of the opinions of treating physicians Steven Sumpter, D.O., and Michael Wolff, M.D. As Plaintiff acknowledges, her claim is governed by the Social Security Administration's 2017 regulations for evaluating medical evidence. The new regulations provide that an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). The ALJ must instead evaluate each opinion's overall persuasiveness and articulate his conclusion utilizing two key factors: "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). The ALJ is not required to explain how he considered other factors—such as the nature of the relationship with the claimant, the frequency of examinations, or the doctor's specialization—unless the ALJ concludes that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical. *See* 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the effect of these new regulations on well-established circuit precedent recognizing a hierarchy of medical opinions and affording deference to the opinions of examining or treating physicians. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). In *Woods*, the Ninth Circuit held that the revised regulations "are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Id.* at 792. The Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting the controverted opinion of a treating or examining doctor is

incompatible with the revised regulations. *Id*. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 1.    Dr. Wolff

In February 2021, Dr. Wolff, a pain-management specialist who treated Plaintiff over several years, completed check-box assessments of Plaintiff's pain (R. at 805–06) and work-related limitations. (R. at 807–11.) Dr. Wolff stated she has spinal issues, "chronic post op pain," lumbar spine radiculopathy, and sacroiliitis. (R. at 807.) For objective evidence supporting Plaintiff's diagnosis and symptoms, Dr. Wolff listed "hardware" of certain vertebrae, decreased sensation in the lower extremities, decreased range of motion, pain, and a positive straight-leg test of the left leg. (*Id*.) Dr. Wolff opined that Plaintiff had a moderate level of pain frequently severe enough to interfere with her attention and concentration. (R. at 805–06.) He opined that Plaintiff could lift only ten pounds; stand or walk for only two hours in an eight-hour day; sit for only two hours; and needed a five- to ten-minute break every 20 minutes to change position. (R. at 807–11.) He estimated Plaintiff would likely be absent from work two to three times per month. (R. at 811.)

The ALJ found Dr. Wolff's opinion "not very persuasive." (R. at 26.) The ALJ found Dr. Wolff's treatment notes supported the limitations set forth in the ALJ's RFC determination, which accounted for Plaintiff's degenerative disc disease and "reduced range of motion in the lumbar spine, with reduced sensation in the right lower extremity." (*Id*.) The ALJ found the more restrictive limitations Dr. Wolff assessed "are not supported given that the claimant was often observed with full to near full strength in the bilateral lower extremities, no noted strength deficits in the bilateral upper extremities, intact reflexes and a normal gait." (*Id*.) The ALJ cited to treatment notes that, during certain examinations, Plaintiff exhibited no muscle weakness in her extremities (R. at 696, 768);

normal motor strength (R. at 732, 736, 740, 768); normal gait and station (R. at 696, 736, 762, 768); no difficulty walking (R. at 702, 713, 720, 768, 783); generally intact sensation and reflexes (R. at 732, 736, 740, 783, 789); and a negative straight-leg test. (R. at 795.) The treatment notes also included contrary observations that Plaintiff had frequent spinal tenderness and general back pain (R. at 695–96, 732, 736, 740, 795); occasionally irregular or "hobbling" gait (R. at 732, 740); weakness in her right leg (R. at 702, 713, 720, 740, 783, 789); and pain when extending her right leg. (R. at 782, 789, 794.)

Plaintiff argues that in rejecting Dr. Wolff's opinions, the ALJ failed to provide a sufficient explanation of the supportability and consistency factors backed up by substantial evidence. While the ALJ's explanation is not a model of clarity, the Court is not persuaded that it is legally insufficient under the applicable standards.

The supportability factor refers to "the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)). Here, while he did not explicitly discuss the "supportability factor," the ALJ made clear that he found Dr. Wolff's opinions were not sufficiently supported by his treatment notes. The ALJ's analysis was not irrational. Normal arm-strength findings are rationally inconsistent with more restrictive weight-carrying limitations; normal or only slightly diminished leg-strength, gait, and reflex findings are rationally inconsistent with more restrictive standing limitations. While it is less clear how normal leg strength, reflexes, and gait are inconsistent with the restrictive sitting limitations, elsewhere in his decision the ALJ discussed Plaintiff's physical examination findings in more detail. (R. at 25.) Among the findings he cited were negative results on a straight-leg-raising test by Dr. Wolff in February 2020, which was inconsistent with the positive result Dr. Wolff cited in support of his opinions in February 2021. (*Compare* R. at 696 *with* R. at 807.) In that earlier portion of his decision, the ALJ also cited to treatment notes indicating Plaintiff responded positively to treatment. For example, Plaintiff reported in August 2020 that, after a spinal injection, she was "80% improved" with more function and less pain after spinal injections. (R. at 780.) In

November 2020, she reported more aching as the injection "was wearing off," but stated the injections reduced her symptoms by 80–90% which allowed her "to be more functional." (R. at 786.) Thus, when the rather terse paragraph evaluating Dr. Wolff's opinions is read together with the rest of the decision, the ALJ's supportability analysis "may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

The same is true as to the consistency factor. This factor refers to "the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212 (citing 20 C.F.R. § 404.1520c(c)(2)). Again, the ALJ did explicitly discuss the "consistency factor," but made clear he found Dr. Wolff's opinions "inconsistent with the evidence as a whole." (R. at 26.) In addition to the observations by Dr. Wolff's team, the ALJ cited to similar treatment notes by other providers, including Dr. Sumpter. (R. at 26 (citing R. at 732, 736, 740, 762, and 768).) As noted, the ALJ provided more detailed analysis of the record elsewhere (*see* R. at 25) and noted findings that Plaintiff responded well to conservative treatment. (R. at 24.)

Plaintiff argues that the ALJ erred by failing to specifically discuss why the cited findings "cancelled out" other findings that supported Dr. Wolff's assessments. However, "the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Instead, the ALJ was required to explain why he found Dr. Wolff's assessments inconsistent with the other medical evidence in a manner supported by substantial evidence, which he did. Many of the cases Plaintiff cites are therefore distinguishable. For example, in *Baker v. Social Security Commissioner*, the ALJ had offered "no explanation as to why she found the[] opinions inconsistent with or unsupported by the rest of the medical record" and failed to cite any contradictory evidence. No. CV-21-08084-PCT-SPL, 2022 WL 2390945, at *3 (D. Ariz. July 1, 2022). Likewise, in *Boyd v. Social Security Commissioner*, the ALJ had failed to identify specific portions of the record with which the medical opinion was inconsistent. No. CV-20-08340-PCT-DWL, 2022 WL 3152492, at *5 (D. Ariz. Aug. 8, 2022). The same is not true here, where the ALJ cited and discussed inconsistent medical evidence in the record.

### 2.       Dr. Sumpter's Assessments

Plaintiff's longtime treating physician, Dr. Sumpter, also completed check-box assessments of Plaintiff's pain (R. at 798) and work-related limitations. (R. at 799–804.) Dr. Sumpter stated Plaintiff had lumbar radiculopathy, spondylolisthesis, idiopathic peripheral neuropathy, chronic neck/back pain, and diastolic dysfunction. (R. at 799.) He noted symptoms of "sharp, tingling pain shooting down legs[,] weakness and difficulty ambulating." (*Id*.) For objective supporting evidence, Dr. Sumpter listed "decreased sensation in legs and decreased [range of motion] of lower extremities [and] muscle hypertoxicity." (*Id*.) Dr. Sumpter opined that Plaintiff had a moderately severe level of pain constantly severe enough to interfere with her attention and concentration. (R. at 798.) He opined that Plaintiff could lift less than ten pounds; stand or walk for only two hours in an eight-hour day; and sit for only 40 minutes at a time and only two hours in an eight-hour day, alternating between sitting and standing every 20–30 minutes. (R. at 799–801.) He opined that Plaintiff would likely miss work more than three times per month. (R. at 803.)

The ALJ found Dr. Sumpter's opinions "not very persuasive." (R. at 26.) The ALJ made this finding for the same reasons, and in the same paragraph, that he rejected the opinions of Dr. Wolff. Accordingly, Plaintiff makes the same arguments in challenging the ALJ's evaluation of each physician's opinions.

The Court's conclusions above regarding the ALJ's evaluation of Dr. Wolff's opinion are equally applicable to his evaluation of Dr. Sumpter's. While the ALJ's explanation was not, as noted, a model of clarity, it was sufficiently reasoned and supported. As to supportability, the ALJ cited treatment notes that included Dr. Sumpter's inconsistent observations that, during certain examinations, Plaintiff had normal motor strength and intact sensation (R. at 732, 736, 740), and was "ambulating normally." (R. at 732, 736.) To be sure, not all of Dr. Sumpter's observations were inconsistent with his opinions—on one occasion he noted irregular or "hobbling" gait and "limited ambulation" (R. at 740)—but that does not wholly invalidate the ALJ's analysis under the substantial-evidence standard. As to the consistency factor, the ALJ pointed to other contradictory or

1    inconsistent findings in the record, including observations by Dr. Wolff and his team. (R.

2    at 26.) Thus, the ALJ's evaluation of Dr. Sumpter's opinion was not erroneous.

3        **B.    Evaluation of Plaintiff's Symptom Testimony**

4        Next, Plaintiff argues the ALJ failed to provide adequate reasons for rejecting her

5    symptom testimony. Because the ALJ found Plaintiff had presented objective medical

6    evidence of an impairment which could reasonably be expected to produce her alleged

7    symptoms and found no evidence of malingering, the ALJ was required to provide

8    "specific, clear and convincing reasons for rejecting [Plaintiff's] testimony regarding the

9    severity of [her] symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th

10   Cir. 2014) (citations and quotation marks omitted). "General findings are insufficient;

11   rather, the ALJ must identify what testimony is not credible and what evidence undermines

12   the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting

13   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

14       At the hearing, Plaintiff testified she had severe pain and weakness in her

15   extremities that prevented her from sitting for more than 20 to 30 minutes at time; walking

16   for more than ten minutes without stopping; or driving for more 40 minutes at a time. (R. at

17   45–51.) She testified that in a typical eight-hour day, she spent the majority of her time in

18   bed. (R. at 49.) She had difficulty with household chores: She was able to bathe herself,

19   cook "maybe twice a week" and fold her own laundry, but needed her son's help to take

20   her clothes out of the washing machine and bring them to her room. (R. at 51.) She was

21   able to drive to doctor's appointments and to the grocery store, though she would "start to

22   feel the [burning] sensation going down my leg" after approximately 40 minutes of driving.

23   (R. at 50.) She found it too painful to go on small walks or hikes. (R. at 52.) Although she

24   started to work again part-time after she was in a car accident in March 2020, she was

25   subsequently laid off because she "was having too many call offs." (R. at 44–45.)

26       The ALJ generally found that Plaintiff's "statements concerning the intensity,

27   persistence and limiting effects of [her] symptoms are not entirely consistent with the

28   medical evidence and other evidence in the record." (R. at 26.) The ALJ outlined the

1   reasons for his adverse credibility determination elsewhere in his decision, including that
2   her "subjective complaints appear inconsistent with the other evidence" and the "objective
3   medical evidence, the effectiveness of treatment, and the claimant's activities of daily
4   living, illustrate greater functional abilities than alleged." (R. at 24–25.)

5         Plaintiff argues that the ALJ "failed to connect anything specific in the medical
6   record to a specific inconsistency with any particular portion of [her] symptom testimony."
7   (Pl. Br. at 19.) The Court agrees. While the ALJ went further than merely repeating the
8   standard boilerplate language that Plaintiff's testimony was "not entirely consistent with
9   the medical evidence and other evidence in the record," *cf. Treichler*, 775 F.3d at 1103, the
10  ALJ nonetheless failed to specify "what parts of [her] testimony were not credible and
11  why." *Id.* (citing *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014)). The ALJ provided
12  a detailed summary of the medical evidence in explaining his decision. But he did so in
13  service of the conclusory statement that "the objective medical records fail to support the
14  severity of impairments and symptoms alleged." (R. at 24.) He did not explain with any
15  specificity which of Plaintiff's symptoms he found unsupported. The only specific portions
16  of testimony the ALJ analyzed were Plaintiff's reports of back and neck pain. (*See* R. at
17  24–25.) In the next paragraph, however, the ALJ wrote that Plaintiff's "allegations of neck
18  and back pain, with radiation to the upper and lower extremities, is reflected [sic]
19  throughout the record" (R. at 25 (citing R. at 755–79)), suggesting he found this portion of
20  her testimony credible. What the ALJ failed to do was "identify the testimony that was *not*
21  credible, and specify what evidence undermines the claimant's complaints." *Treichler*, 775
22  F.3d at 1103 (citation and quotation marks omitted and emphasis added).

23        Defendant argues that the ALJ's reasons for rejecting Plaintiff's testimony were
24  valid and well-supported. This fails to address the specificity problem. Because the ALJ
25  did not specify the portions of Plaintiff's testimony he found lacking in credibility, the
26  Court has no way of reviewing whether the ALJ's reasons for rejecting that testimony were
27  clear and convincing. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006)
28  (noting that in the absence of "meaningful explanation," even "facially legitimate reasons

1   for [a] partial adverse credibility finding . . . gives this court nothing with which to assess
2   its legitimacy"). In short, the Court does not agree that "the decision is sufficiently clear to
3   understand the ALJ's reasoning." (Def. Br. at 17.) Why, for example, did the ALJ reject
4   Plaintiff's testimony that she felt intense pain after driving for more than 40 minutes? Or
5   her testimony that she could not sit for more than 20 to 30 minutes at time? Such testimony
6   bore directly on, among other things, her past relevant work as a shuttle driver. (R. at 27.)
7   However, the ALJ failed to explain why he found any specific portions of her testimony
8   not credible, and why.

9   **IV.    CONCLUSION**

10          Although the Court finds no reversible error in the ALJ's evaluation of the medical-
11  opinion testimony, it finds the ALJ failed to provide specific, clear, and convincing reasons
12  for rejecting Plaintiff's symptom testimony. Given that this testimony, if credited, would
13  likely preclude Plaintiff's ability to perform substantial gainful work, reversal is required.
14  The Court is not persuaded that the credit-as-true rule should apply. This case does not
15  present the "rare circumstances" in which "no useful purpose would be served by further
16  administrative proceedings." *Treichler*, 775 F.3d at 1100 (citations and quotation marks
17  omitted). The Court remands for further administrative proceedings.

18          **IT IS THEREFORE ORDERED** reversing the March 30, 2021 decision of the ALJ
19  (R. at 19–29), as affirmed by the Appeals Council on November 30, 2021 (R. at 1–6).

20          **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and
21  close this case.

22          Dated this 7th day of August, 2023.

24          Honorable John J. Tuchi
25          United States District Judge

- 11 -